F. C. HARTSHORN, Plaintiff, v. THE WRIGHT COUNTY DISTRICT COURT, and W. D. EVANS, Judge, Respondents.

**Drainage:** ESTABLISHMENT OF DISTRICTS: POWER OF COURT ON APPEAL.

1  Authority of a board of supervisors to establish a drainage district is dependent upon a survey and report of an engineer, which is a prerequisite to its power to act. And on an appeal from the action of the board the court is confined to affirming or reversing the order of the board and the making of such orders as may be required to give effect to its decree; it can not undertake the establishment of a district substantially different from that under consideration in the order appealed from.

**Same.** A decree of the court on appeal which materially decreases
2  the area of the district as determined by the supervisors is a material charge not within the power of the court to order.

**Same:** *certiorari.* *Certiorari* is a proper remedy for a review of the action of the district court on appeal, in the matter of the establishment of a drainage district, although by the statute an appeal is the only remedy for reviewing the action of the supervisors in the district court.

**Same:** POWER OF SUPERVISORS: JURISDICTION OF DISTRICT COURT. A board of supervisors is not authorized by the drainage statutes to adopt a plan of drainage on its own motion, or to consider one not recommended by a competent engineer; and as a review of its action is limited to an appeal the district court can not hear additional evidence for the purpose of determining whether there may not be a different district established, but is to exercise only its appellate jurisdiction and try the issues *de novo* as made before the supervisors; and in the exercise of that power the court should reluctantly interfere with the action of the board.

WEDNESDAY, APRIL 7, 1909.

ORIGINAL action in *certiorari* to review the orders and judgment of the district court in certain proceedings instituted for the establishment of a drainage district. Petition *sustained* and decree *annulled.*

*Kelleher & O'Connor,* for plaintiff.

*Nagle & Nagle* and *Birdsall & Birdsall,* for respondents.

DEEMER, J.—The plaintiff herein, F. C. Hartshorn, with others, petitioned the board of supervisors of Wright County for the establishment of a drainage district covering certain described territory through which it was proposed that an open ditch be constructed draining in a southerly direction. Other petitions were thereafter presented for the construction of certain laterals to the proposed ditch. An engineer appointed for that purpose made a survey of the district finding in favor of its construction and of the establishment of the district as asked by the petitioners, and under date of September 20, 1906,

the board entered its finding of the expediency of the improvement and its approval of the plan reported by the engineer, and ordered service of notice upon parties in interest, naming December 11, 1906, as the date for the presentation of objections, if any, to the proposed improvement. At said adjourned meeting, several owners of land within the proposed district limits made objection thereto, denying the feasibility of the plan of drainage or denying any resulting benefit to their respective tracts of land while other owners made the point that the cost of the improvement was greatly in excess of the benefits which could reasonably be expected to the lands charged with its construction. Still others presented a petition asking that the plan of the proposed drainage district be changed or modified by providing for the outlet or discharge of the ditch at a point about a mile north of the southern terminus, as indicated in the original petition. The board of supervisors, having entered of record its finding of the sufficiency of the original petition, and having directed the appointment of appraisers to consider and report upon the claims for damages, adjourned to a day named for final action. On the date thus fixed the appraisers made their report, and the petitioners filed a bond for the payment of damages as provided by law. A resolution was offered by one of the supervisors, to the effect that the cost of the improvement would be a greater burden than the property to be charged therewith should bear, and that the establishment of the district be therefore denied, but, on being put to vote, the resolution was not adopted. On the following day a motion to reconsider the action taken by the board on September 20, as hereinbefore recited, was carried. Following this another motion was adopted instructing the engineer "to present a new plan for said drainage district fixing the terminus of the improvement at the south line of section 16 in Dayton township, and providing for tile to be laid

in the two branches of lateral No. 3." The effect of this
order, if valid, was to call for a plan shortening the main
line of ditch by moving the southern terminus back about
one mile substantially as we have seen had been asked by
a part of the landowners in their petition presented on
September 20, 1906, and to provide for tile in place of
an open ditch in a part of lateral No. 3. After consider-
able discussion and the hearing of testimony, the board
voted to reject the modified plan. It was then moved and
carried that "the board now rescind all action taken by
the board of supervisors with reference to the plan of ditch
No. 21 at meeting of September 20, 1906." Thereupon
it was further moved and carried that the damages and
cost of construction of the ditch were more burdensome
than the land benefited thereby ought to bear, and that
the petition be therefore denied. From this action Hart-
shorn and others of the petitioners appealed to the district
court, where several motions to dismiss on jurisdictional
and other grounds were made and overruled. After ex-
amining the transcript of the proceedings before the board
of supervisors, and hearing the testimony of witnesses, the
court entered a decree by which it was ordered that the
resolution of the board of supervisors refusing to estab-
lish the drainage district be reversed. It was also further
ordered, with the consent of all of the parties except
Hartshorn and one or two others, that drainage district
No. 21 be established as prayed by the petitioners to in-
clude all of the territory shown upon the engineer's plat
and profiles, except that the southern boundary thereof
should be the south line of sections 14, 15, 16 and 17
of the township named. The board of supervisors were
also ordered to make and place on record a proper resolu-
tion and entry showing the establishment of the drainage
district in accordance with the decree. To review this
decree the plaintiff Hartshorn instituted the proceeding
now before us, alleging, in substance, that the district

court was without jurisdiction or authority on the trial of such appeal to do more than to affirm or reverse the order of the board of supervisors, and especially that it was without authority to order the establishment of a district differing in any material respect from that which had been asked for by the petitioners and surveyed and approved by the engineer.

The majority of this court think that this contention is well founded, and that the district court exceeded its authority in entering a decree providing for the establishment of the drainage district in a modi-

1. DRAINAGE: establishment of districts: power of court on appeal.

fied form, and requiring action to that end be taken by the board of supervisors. Without going into minor details, the statute (chapter 2, title 10, Code Supp. 1907) prescribes the method of establishing drainage districts as follows: The proceedings are instituted by petition from property owners within the proposed district to the board of supervisors, upon the filing of which in due form the engineer is to make a survey and report his findings. Section 1989a2. If the engineer reports favorably upon the establishment of the district, the board of supervisors is then to examine the report, and, if the plan is approved and found expedient by said board, it directs the auditor to serve the proper notice upon the parties in interest fixing the date for hearing objections, if any, to the establishment of the district and for the consideration of claims for damages on account thereof. Section 1989a3. On the date fixed in the notice, the board proceeds to hear and determine the sufficiency of the petition, and, if the proposed improvement is not found to be of public utility, the proceedings may be dismissed without further action. If, however, it finds the improvement to be one conducive to public health, convenience, and welfare, or to the benefit of the public and no claims for damages have been filed, it may then enter a final order for the

establishment of the district.   If, however, further examination is deemed desirable, or if claims for damages have been filed, the board is to proceed no further than to determine the necessity of the improvement, and adjourn to some suitable time in the future to give opportunity for an examination and report by the appraisers upon the claims for damages.   Section 1989a5.   At the final meeting when the report of the appraisers has been considered, if the board is of the opinion that the cost of construction and damages awarded are not excessive, and a greater burden than the property benefited by the improvement should bear, it proceeds to locate and establish the district and drain, or it may provide for a further permanent survey and report by an engineer.   From the final order, whether establishing or refusing to establish the district, the right of appeal is reserved to any party aggrieved thereby.   Such appeal is to be tried in equity, and the court upon trial of such appeal shall enter such order as may be proper in the premises, and the clerk of said court must certify same to the board of supervisors, who shall proceed thereafter in said matter in accordance with the orders of the court.   Section 1989a6.   From these statutory provisions and restrictions the conclusion is reached:   First.   That the survey and approval of the proposed district by the engineer appointed for that purpose is essential to the authority of the board of supervisors to proceed to the establishment of the district.   Second.   That upon appeal to the district court in such cases the court may pass upon the order appealed from, affirming or reversing the same, and making such orders for the direction of the board of supervisors as may be proper for giving effect to the court's judgment or decree, but can not properly undertake to decree the establishment of a district varying or differing in a substantial degree from that which was under consideration in the order appealed from.

The lands remaining in the district in its modified or changed form may be affected in a materially different manner than would result from the establishment of the boundaries as originally contemplated. The damages to some tracts of land may be thereby enhanced or diminished, and the resulting benefits may be materially greater or less and it was evidently not within the thought of the Legislature in this enactment that the court should assume the duty delegated to the board of supervisors of appointing the appraisers, viewing the premises and passing originally upon claims for damages. The modification of the drainage district as ordered by the decree under review was not a change or variation in some minor details not materially affecting the district petitioned for, but it reduced the area thereof by a matter of some three and one-half square miles, a change of such large proportion as may well have deprived the plan of drainage of any desirability in the judgment of those who instituted the proceedings and put up the bonds for expenses and damages. Many collateral questions are argued by counsel; but, as the views above expressed are decisive against the jurisdiction and power of the court to enter the decree now under review, we think it unnecessary to enter upon their discussion. We may say, however, we find no reason to question the jurisdiction of the board of supervisors or the sufficiency of the appeal taken from its orders to the district court.

2. SAME.

A motion has been filed in this court to quash the writ of *certiorari* on the ground that this remedy is not available to the plaintiff. In support of this proposition, we are cited to Code Supp. 1907, section 1989a46, which, among other things, provides that "failure to appeal from the order of the board of supervisors of which complaint is made shall be a waiver of any illegality in the proceedings, and the remedies provided in this act shall be exclusive of all other

3. SAME: *certiorari.*

remedies." While this provision may and possibly does take away the right to have the proceedings of the board of supervisors reviewed upon *certiorari* by the district court, it does not expressly or by necessary implication so limit the remedies for a review by this court of the judgment which the district court may enter upon the trial of such an appeal.

It is contended that the district court on appeal under the power given it by section 1989a6, Code Supp. 1907, had authority to establish a drainage district, although not

4. SAME: power of supervisors: jurisdiction of district court.

recommended by the surveyor or approved by the board of supervisors, even though it be one not petitioned for by the landowners whose lands would be affected thereby. The statute provides that the appeal to the district court shall be tried as an ordinary proceeding, save that, when the appeal is from the order of the board establishing or refusing to establish the drainage district, it shall be tried in equity, and that the court shall enter such order as may be proper in the premises. It will be observed that the statute uses the definite article "the" in referring to the drainage district, instead of the indefinite one, "a." It is to the drainage district which the board was asked to establish, and which was properly before it for consideration, which the court is to direct its attention on appeal, and not some indefinite one which the court might in its judgment think proper to consider. The court is to exercise appellate rather than original jurisdiction, and there was no purpose to confer upon it original powers in the premises. It may well be doubted whether the establishment of a drainage district is a judicial function; but, however that may be as an abstract proposition, it is clear that no attempt was made to confer original jurisdiction upon the district court. The section under consideration does not authorize the introduction of additional testimony in the district court for the purpose of determin-

ing whether or not there is some district which should be established although not petitioned for or surveyed. At most, it is given power to try the case *de novo* upon the issues before the board of supervisors, with reference to some district under consideration by the board, and it can make no order which the board could not have made upon the same record. That an appellate court must consider the case on appeal upon the issues before the inferior tribunal is well supported by authority. *Doubet v. Board,* 135 Iowa, 95; *Doolittle v. Shelton,* 1 G. Greene, 271; *Galusha v. Wendt,* 114 Iowa, 597; *Lambe v. McCormick,* 116 Iowa, 169; *In re Assessment Farmers' Loan & Trust Co.,* 129 Iowa, 588; *Temple v. Hamilton,* 134 Iowa, 706.

Going back now to the power of the board of supervisors, it will be observed that it must examine the petition for the district, both as to form and substance, which may be amended at any time before final action; may view the premises and dismiss the proceedings because not conducive to public health, convenience or welfare, or of public benefit or utility; or may locate or establish the same according to the recommendations of the engineer; or may order the engineer to make a further examination and report, and further proceedings shall be continued to another date. Section 1989a5, Code Supp. 1907. By section 1989a2 it is provided that the board shall appoint an engineer who shall examine the lands, and survey and locate such drains and ditches. He is also required to make a return to the county auditor showing the starting point, route and termini of the ditch or drain, together with a plat and profile showing the ditches, drains, etc., the course and length thereof, elevations, etc., the boundaries of the district, etc. It is then provided in section 1989a3·that the board shall examine the plan and return of the engineer, and either approve or disapprove of the same, and, if it disapproves thereof, it shall direct the engineer or another selected by them to make another plan

and upon this they again are called upon to act.    The
board by these sections is confined to the approval of a
plan adopted by some engineer as feasible from an en-
gineering point of view, and in our opinion it is not au-
thorized to adopt some plan on its own motion or to
consider any plan not recommended by a competent en-
gineer.    There is much reason for such provisions.    The
ordinary member of a board of supervisors has no such
knowledge of the subject of drainage, plans, and districts
as to justify leaving this matter to his judgment or dis-
cretion, and it was a wise requirement which limited the
board in its final action to some plan which was approved
by a competent engineer.    This point is clearly made in
*Zinser v. Board,* 137 Iowa, 660.    In that case it is said
that a report and plat from an engineer is required for
various purposes, which are therein set forth, and that,
until the return of a plat is made and recommended by
him, the board should not order the construction of the
proposed improvement.    Again it was held in that case,
and also in *Temple v. Hamilton County,* 134 Iowa, 706,
that a discretion is lodged in the board in refusing to estab-
lish a drainage district, and that insufficiency of the en-
gineer's plat and return may be good ground for denying
the establishment of the district.    Now, in the present case,
the district court overruled the action of the board in
denying the establishment of the drainage districts which
had been reported by the engineers, and established one
which had never been platted, reported or recommended
by any engineer.    The departure was very material, as it
involved the mouth of the ditch, shortening it a mile or
more, and directed the board to establish such modified
district, without any plat or report from a competent en-
gineer and without any sufficient showing from experts
that such plan was feasible or should be adopted.    We do
not think this was a proper exercise of appellate jurisdic-
tion.    On the contrary, such a rule, if established, would

make the district court a final arbiter in such matters, and permit it to override the reports, plans and surveys of competent engineers, who, under the statute, are required to make them as a basis for action by the board of supervisors. We do not think that the board, in the exercise of its original jurisdiction, can do more than establish a district which has been planned and recommended by a competent engineer. Its action is upon such a plan or survey, and not upon some other plan which the members thereof may, in their judgment, think feasible. If the board has no such power, surely the district court on appeal can not exercise it. In *Temple v. Hamilton,* 134 Iowa, 706, it is said that the power is primarily legislative rather than judicial, and it was not the thought of the Legislature to confer legislative power upon the courts. Appeal is provided, but upon such appeal the court should reluctantly interfere with the action of the board. Surely it has no jurisdiction to establish districts which have not been recommended by a competent surveyor, and which the board may have denied for that very reason. We are of opinion that the district court erred in establishing a district which it thought might be feasible, although denied by the board in the proper exercise of its power and authority. It is true that some of the interveners petitioned for the establishment of some such district as the trial court ordered, but the board denied this petition, and no survey was ordered thereon; but, as said in the *Zinser* case, *supra,* the petition, while a necessary step in the proceedings, is not the document upon which the board is finally called upon to act. Its function is to point out the locality to be drained in a general way, so as to indicate who are necessary parties, who shall give security for costs, etc. The action of the board is finally upon the reports, plans, surveys and recommendations of the engineer, and without this it has no authority to act—at least no power to establish a district not recommended, platted, planned

and surveyed by a competent engineer. It may in its discretion order new surveys, etc., but the appeal to the district court is from the order. of the board refusing to establish the drainage district, and not from the refusal of that board to establish any district. The language of the statutes referred to is plain and unambiguous, and we think a district court is limited in its investigations upon appeal to the action of the board upon the plans and recommendations of the engineer. Any other rule would make of the court an original tribunal with no such limitations as are safeguarded where the action is before the board of supervisors. A reading of the entire act. relating to drainage, which is too long to be embodied in this opinion, clearly indicates that we have given it the proper construction.

It is said, however, that the district court had power to reverse the action of the board, and that to this extent the decree should be upheld. Of course, the court had such power; but, as said in the *Temple* case, *supra,* the court should be very reluctant to interfere with the action of the board upon appeal, and should do so only upon clear, satisfactory, and convincing evidence that the ditch should be established. In this case the court affirmed the action of the board in so far as the board was authorized to act, and reversed it only in so far as it established a new district for which there was no petition by plaintiff, and no plan recommended by a competent engineer. This was an affirmance of the action of the board, and that should have ended the matter upon the proceedings then before it. New petitions may be presented by interveners, and the board may be called upon to have a resurvey of the proposed district, and it may be that the board of supervisors may establish a plan recommended by an engineer upon such petition. But it is not proper for the district court to establish the same in the absence of the essential prerequisites thereto. Moreover, it must be remembered

that it was upon plaintiff's appeal that the order in this case was made, and not upon the appeal of the interveners. Plaintiff was insisting that the ditch petitioned for by him, which had been recommended by an engineer, and which had been denied by the board, should have been established, and he asked that on his appeal to the district court. This the district court refused to do, but upon his appeal it established a district which he had not petitioned for, and which he did not want. Upon such an appeal, the district court manifestly had no authority to establish another drainage district for the benefit of certain interveners who did not appeal. Authorities from other States which have been cited by defendant's counsel are not in point or in any manner controlling. The question before us is one of statutory construction, and our own cases leave no doubt about the proper interpretation thereof.

The petition must be sustained, and the decree of the district court is *annulled*.